1  **KILPATRICK TOWNSEND & STOCKTON LLP**
   DENNIS L. WILSON (Bar. No. 155407)
2  dwilson@kilpatricktownsend.com
   DAVID K. CAPLAN (Bar No. 181174)
3  dcaplan@kilpatricktownsend.com
   CAROLINE Y. BARBEE (Bar No. 239343)
4  cbarbee@kilpatricktownsend.com
   9720 Wilshire Blvd, PH Suite
5  Beverly Hills, CA  90212-2018
   Telephone:   310-248-3830
6  Facsimile:    310-860-0363

7  Attorneys for Plaintiff
   DOCUSIGN, INC.
8

9                  **UNITED STATES DISTRICT COURT**

10          **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

11                    **SAN FRANCISCO DIVISION**

12

13  DOCUSIGN, INC., a Washington
    Corporation,                          **COMPLAINT FOR:**
14
                Plaintiff,
15                                         **(1) TRADEMARK INFRINGEMENT
                                           UNDER 15 U.S.C. § 1114(1);**
       v.                                  **(2) FALSE DESIGNATION OF ORIGIN
16                                         UNDER 15 U.S.C. § 1125(A);**
    SKYSLOPE, INC., a California Corporation,  **(3) TRADE DRESS INFRINGEMENT
17  and DOES 1 through 5, inclusive.       UNDER 15 U.S.C. § 1125(A);**
                                           **(4) STATUTORY UNFAIR
18              Defendants.                **COMPETITION UNDER CAL. BUS. &
                                           PROF. CODE § 17200;**
19                                         **(5) COMMON LAW
                                           TRADEMARK INFRINGEMENT AND
20                                         UNFAIR COMPETITION**

21                                         **DEMAND FOR JURY TRIAL**

22

23          Plaintiff DocuSign, Inc. ("DocuSign" or "Plaintiff"), by and through its undersigned

24  counsel of record, for its Complaint against Defendant SkySlope, Inc. ("SkySlope" or

25  "Defendant"), and DOES 1 through 5 (collectively "Defendants") alleges as follows:

26  / / /

27  / / /

28  / / /

## NATURE OF THE CASE

1.     Following the enormous success and popularity of Plaintiff's distinctive DocuSign online eSignature platform, Defendant SkySlope launched its own competing eSignature platform called DigiSign.

2.     To launch its competing platform, SkySlope chose trademarks and trade dress which mimic the successful trademarks and trade dress used by DocuSign.   This misuse of DocuSign's trademarks and trade dress has had an immediate impact on DocuSign and its users – as users have already been confused as to DocuSign's association with SkySlope's platform.

3.     DocuSign brings this action to address SkySlope's knowing, willful and intentional infringement of plaintiff DocuSign's federally registered ⊘ mark and its copying of DocuSign's distinctive eSignature platform.

4.     More specifically, rather than select from a universe of unique names and layouts for this service, SkySlope intentionally chose a name and logo that seeks to exploit DocuSign's hard-earned reputation in the eSignature space.  A side-by-side comparison of DocuSign's logo with SkySlope's DigiSign logo (hereinafter the "DIGISIGN Logo") is set forth below:



5.     SkySlope appears to have selected this logo with DocuSign's own online eSignature platform in mind, as evidenced by the fact that SkySlope's DigiSign online eSignature platform bears a striking resemblance to Plaintiff's DocuSign eSignature platform in a number of significant respects, including the overall look and feel as described more fully below.

6.     In addition to adopting a confusingly similar logo and eSignature platform layout, SkySlope also brazenly began using DocuSign's federally registered ⊘ mark in connection with marketing and promoting SkySlope's own competing DigiSign eSignature platform.

7.     Despite DocuSign's clear communications with SkySlope regarding its concerns with the DigiSign logo, use of the ⊘ logo, and SkySlope's eSignature platform layout, SkySlope continues to own and operate an eSignature platform that violates DocuSign's intellectual property rights.  DocuSign therefore brings this action to prevent the continued willful

infringement of its rights due to SkySlope's operation of the DigiSign eSignature platform and use

of the ⊘ mark in its advertising and promotional materials. This is an action for violation of

the federal Lanham Act, 15 U.S.C. §§ 1114(1) and 1125(a), violation of the California statutory

law of unfair competition, California Business and Professions Code § 17200, California common

law trademark infringement and unfair competition.

## **THE PARTIES**

8.      Plaintiff DocuSign is a corporation organized and existing under the laws of the

State of Washington, having its principal place of business at 221 Main Street, Suite 1000, San

Francisco, California 94105.

9.      On information and belief, Defendant SkySlope is a corporation organized and

existing under the laws of the State of California, having its principal place of business at 1210 G

Street, Sacramento, California.

10.     DocuSign is currently unaware of the identities of defendants John Does 1-5 and

therefore sues such defendants by such fictitious acronyms.  DocuSign is informed and believes

that discovery will reveal the true identities of these defendants.  DocuSign will amend this

Complaint to identify these defendants by name after their identities are discovered.

11.     On information and belief, the actions alleged herein to have been undertaken by

Defendants were undertaken by each defendant individually, were actions that each defendant

caused to occur, were actions that each defendant authorized, controlled, directed, or had the

ability to authorize, control or direct, and/or were actions in which each defendant assisted,

participated or otherwise encouraged, and are actions for which each defendant is liable.  Each

defendant aided and abetted the actions of the Defendants set forth below, in that each defendant

had knowledge of those actions, provided assistance and benefitted from those actions, in whole or

in part.  Each of the Defendants was the agent of each of the remaining Defendants, and in doing

the things hereinafter alleged, was acting within the course and scope of such agency and with the

permission and consent of each and every one of the other Defendants.

/ / /

/ / /

1

**JURISDICTION AND VENUE**

2      12.     This action arises under the trademark laws of the United States, 15 U.S.C. § 1051,

3  *et seq*., particularly under 15 U.S.C. §§ 1114 and 1125, as well as California statutory unfair

4  competition law and the common law of unfair competition and trademark infringement in

5  California.  This Court has jurisdiction of the federal claims under 28 U.S.C. §§ 1331 and 1338,

6  and 15 U.S.C. §§ 1116, 1121, and 1125.  This Court has supplemental jurisdiction of the state law

7  claims under 28 U.S.C. §§ 1367(a) and 1338(b), those claims being joined with a substantial and

8  related claim under the Trademark Laws of the United States and so related to the federal claims

9  that they form part of the same case or controversy and derive from a common nucleus of

10  operative fact.

11      13.     DocuSign is informed and believes and on that basis alleges that this Court has

12  personal jurisdiction over Defendants, who have directed infringing acts at DocuSign in this

13  District, and have engaged in infringing acts that they knew or should have known would cause

14  injury to DocuSign in this District.

15      14.     Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial

16  part of the events or omissions giving rise to DocuSign's claims occurred in this District.

17

**INTRADISTRICT ASSIGNMENT**

18      15.     This being an Intellectual Property Action, the Court's Assignment Plan provides

19  for assignment of this Action on a district-wide basis.  To the extent this Action may be deemed to

20  have arisen in a particular county within this District, that county is San Francisco County on the

21  grounds that a substantial part of the events or omissions which give rise to DocuSign's claims

22  occurred in San Francisco County, where DocuSign is located.

23

**FACTUAL ALLEGATIONS**

24  **A.    DocuSign and Its eSignature Business**

25      16.     DocuSign is currently, and for years has been, one of the world's leading cloud-

26  based eSignature providers.  Founded in 2003, DocuSign provides technology that allows

27  companies to digitally conduct business by eliminating the printing, faxing, scanning, and

28  overnighting of documents that was traditionally required to complete a business transaction.

17.     The DocuSign eSignature platform enables individuals and businesses to electronically send, sign, track, store, and manage transactions in the cloud.  Signatures processed by DocuSign are legally comparable to traditional signatures based on DocuSign's compliance with the United States ESIGN Act.  The DocuSign eSignature platform takes care of digital authentication for the user by recording the IP address and physical identifier of the device used to sign a document, the timestamp for when a document was signed and geolocation if available, and the email address used to return the signed document.

18.     More than 40 million users have electronically signed hundreds of millions of documents in 188 countries using DocuSign's eSignature service.  More than 40,000 new unique users join the DocuSign global network every day, and more than 775,000 documents containing more than 3.5 million pages are electronically signed using DocuSign daily.

19.     DocuSign's eSignature platform is used by a broad range of industries to facilitate the signing of contracts and other legal documents.  One of DocuSign's targeted industries is the real estate industry, which accounts for more users than any of DocuSign's other industry verticals.  The real estate industry has been the mainstay of DocuSign's business since its founding in 2003.  In fact, on or about November 14, 2009, DocuSign was named the official and exclusive eSignature provider to the 1 million members of the National Association of REALTORS® ("NAR").  According to NAR, 50% of realtors now use eSignatures to save time and money, and to increase customer satisfaction.  In May 2013, DocuSign acquired Cartavi, a leading provider of real estate transaction software that pioneered the next generation of real estate transaction management with cloud-based technology to empower real estate agents to complete transactions entirely in the cloud and on the go.  That acquisition allowed DocuSign to offer its real estate customers a new solution bundle combining DocuSign's eSignature service with Cartavi's Transaction Rooms software, allowing real estate agents to effectively collaborate and manage all aspects of real estate deals. This product is now marketed as DocuSign Transaction Rooms.

20.     DocuSign and its eSignature platform's reputation for excellence have gained notice from publications such as *Forbes*, *Fortune*, the *New York Times* and *Realtor Magazine*.  In

2014, DocuSign was named to CNBC's Disruptor 50 list, featuring the top 50 companies whose innovations are revolutionizing the business landscape. The Wall Street Journal ranked DocuSign #6 on its list of "Next Big Things" (out of more than 5,900 companies considered). DocuSign has received numerous awards for its technological innovation, including the 2013-2014 Cloud Computing Awards Data Innovation of the Year award, the 2014 Microsoft Office and SharePoint App Development Partner of the Year, and the 2014 NetSuite SuiteCloud Partner of the Year. DocuSign was also named the AlwaysOn OnDemand Company of the Year in 2014.

**B.      DocuSign's Trademarks**

21.     DocuSign is the owner of United States Federal Trademark Registration No. 3,715,274 for the ⬤ mark in International Classes 38, 42, and 45, a true and correct copy of which is attached hereto as **Exhibit A.**

22.     The ⬤ mark is non-functional, and the relevant consuming public recognizes and understands that the ⬤ mark distinguishes and identifies DocuSign's goods and services.

23.     DocuSign also owns United States Federal Trademark Registration No. 4,049,334 for the **DocuSign** mark in International Classes 38, 42, and 45, a true and correct copy of which is attached hereto as **Exhibit B**.

24.     The **DocuSign** mark is non-functional, and the relevant consuming public recognizes and understands that the **DocuSign** Mark distinguishes and identifies DocuSign's goods and services.

**C.      DocuSign's eSignature Platform Trade Dress**

25.     The DocuSign eSignature platform bears a distinctive "look and feel" that has come to be recognized by DocuSign customers operating in the real estate sector. Real estate customers using the DocuSign eSignature platform experience various colors, images, and themes in much the same way that customers visiting a brick-and-mortar business experience the décor, motifs, bright colors, paintings and murals of those businesses.

26.     The DocuSign Trade Dress is comprised of a series of elements that, when experienced together, contribute to the distinctive "look and feel" of the DocuSign eSignature platform. This trade dress includes the placement of images, text boxes and text, colors, frames,

interactive elements and overall mood, style and impression.  These elements are applied throughout the DocuSign eSignature platform in combination to create the DocuSign Trade Dress. Moreover, the DocuSign eSignature platform incorporates a distinctive visual design, graphic treatment and familiar interface that has become readily identifiable by the relevant consuming public as originating from DocuSign.

27.    As set forth herein, the DocuSign Trade Dress is comprised of the following elements in combination to create the overall "look and feel" and experience of the DocuSign eSignature interface:

a.    The use of a logo that starts with a shortened portion of a word, i.e., "docu," short for "document," in block text, and the word "sign" in script font, in the upper left-hand corner of the screen, as depicted in **Exhibit C**;

b.    The use of a blue and yellow color scheme, as depicted in **Exhibit E**;

c.    The use of "Stick-Etab" icons in the shape of a rectangular box with an arrow pointing down to indicate where a recipient should include a signature or initial in a document, with "Standard" and "Custom" options for the icons.  Icons are then dragged from the side of the interface and dropped onto the appropriate place in a document where action needs to be taken.  This is depicted in **Exhibit I.**

d.    Action icons listed on one side of the screen in descending order of: Signature, Optional Signature, Initial, Optional Initial, Full Name, Company, Title, and Date Signed, as depicted in **Exhibit M.**

e.    Reference to an email message with a document attached as an "Envelope," as depicted in **Exhibit O**.

f.    At the bottom of an outgoing email message, options are provided for: first, sending a reminder; second, indicating when a reminder will expire; and third, when to warn the signer of the expiration date, listed in descending order.  The email sender fills in the boxes with the number of days for each option.  These options are depicted in **Exhibit R**.

g. When a recipient receives a document to be signed, DocuSign uses the term "Adopt Your Signature," listing out several options for italicized and/or cursive signatures enclosed in a text box with a blue border, with the signature code written across the middle section of the box border, as depicted in in **Exhibit T**.

h. A "Document History" that lists the details of a particular document first (i.e. subject, ID, status, holder, etc.), then has a chart for time, user, action, activity, and status below with a blue header line.  They both also use the terms "registered," "viewed," "signed," and "sent invitations," with an option to print the eSignature certificate in the upper right hand corner.  This is depicted in **Exhibit X.**

### SkySlope's Business and Infringing Acts

28.     On information and belief, SkySlope was founded in 2009 and is the owner of a cloud-based real estate transaction management solution of the same name.  SkySlope's DigiSign e-Signature platform is offered as part of the SkySlope transaction management solution.

29.     There can be no question that SkySlope was fully aware of the success of DocuSign's eSignature platform prior to selecting the name for and developing its own DigiSign eSignature platform.  Indeed, upon information and belief, SkySlope's founder, Tyler Smith, used the DocuSign eSignature platform prior to developing and launching the SkySlope DigiSign platform.

30.     DocuSign is informed and believes, and on that basis alleges, that SkySlope selected the name and appearance of the *Digi* Sign Logo with DocuSign's **DocuSign** logo and eSignature platform fully in mind.

31.     As shown in detail below**,** SkySlope's DigiSign platform mimics so many elements of the unique, distinctive DocuSign Trade Dress that it cannot be the result of sheer coincidence.  SkySlope's imitation reflects not merely the individual elements of the DocuSign Trade Dress, but its distinctive combination of elements.

32.     The consuming public and media also have made this connection, with one commentator stating that SkySlope's DigiSign eSignature platform "basically ripped off Docusign

COMPLAINT                                                                                                          - 8 -

and called it something different."  Attached hereto as **Exhibit AA** is a true and correct copy of a printout of the aforementioned article.

33.      In addition to copying DocuSign's Trade Dress, SkySlope also availed itself of the use of DocuSign's ⊘ mark to advertise and market its SkySlope real estate transaction management solution, which includes the DigiSign eSignature platform.  Attached hereto as **Exhibit BB** are true and correct copies of examples of SkySlope's ongoing infringement of DocuSign's ⊘ mark.  A representative sample of SkySlope's infringing uses is set forth below:









34.     SkySlope's intentional copying of the DocuSign Trade Dress becomes even more apparent when one looks at the way other eSignature companies have selected the elements that make up the look and feel of their own eSignature platforms.  A brief review of only a small handful of DocuSign's competitors reveals that there are numerous ways in which to visually depict the elements that make up an eSignature platform without having to copy the ways in which DocuSign depicts its eSignature platform.  Depictions of elements of the eSignature platforms of various DocuSign competitors are attached hereto as **Exhibits C - Z**.

35.     Visual depictions of the similarities between the DocuSign Trade Dress and SkySlope's copycat DigiSign eSignature platform are set forth below.  Also set forth below where applicable are visual depictions of elements of competing eSignature platforms, which

/ / /

1    demonstrate that there are a myriad of ways to visually present an eSignature service without

2    having to copy the distinctive elements and "look and feel" of DocuSign's eSignature platform.

3            a.   SkySlope uses a logo strikingly similar to the DOCUSIGN Logo, in the upper

4                 left-hand corner of the screen.  *See* **Exhibits C & D**.  Specifically, the

5                 DOCUSIGN Logo starts with a shortened portion of a word, i.e., "docu," short

6                 for "document," in block text, and the word "sign" in script font next to it.

7                 SkySlope's DIGISIGN Logo is a mirror image of the DOCUSIGN Logo. That

8                 is, the SkySlope DIGISIGN Logo starts with a shortened portion of a word, i.e.,

9                 "digi," presumably short for "digital," in script font, next to the word "sign" in

10                block text.  In contrast, other eSignature competitors use logos containing the

11                word "Sign" but do not begin with the letter "D" or use a mix of block and

12                signature text.



20           b.   Like DocuSign, SkySlope's DigiSign platform uses a blue and yellow color

21                scheme.  In contrast, competitor CoSign uses a blue and red color scheme, and

22                eSign Live uses a purple and green color scheme.

23    / / /

24    / / /

25    / / /

26    / / /

27    / / /

28    / / /

COMPLAINT                                                                              - 11 -

**DocuSign – Blue & Yellow Color Scheme (Exhibit E)**



**SkySlope/DigiSign – Blue & Yellow Color Scheme (Exhibit F)**



1

**<u>CoSign – Blue & Red Color Scheme (Exhibit G)</u>**



**<u>eSign Live – Purple & Green Color Scheme (Exhibit H)</u>**



c.   Like DocuSign, SkySlope uses icons in the shape of a rectangular box with an arrow pointing down to indicate where a recipient should include a signature or initial, with "Standard" and "Custom" options for the icons.  Icons are then dragged from the side of the interface and dropped onto the appropriate place in a document where action needs to be taken.  In contrast, competitor Adobe

EchoSign uses standard horizontal rectangular boxes that are dragged from the top of a document, while competitor eSign Live uses a highlighted box that a user can click within a document, which then brings up a drop down menu that indicates whether the recipient will click-to-sign, click-to-initial, or capture signature by drawing it on the screen themselves.

## DocuSign (Exhibit I)



## SkySlope/DigiSign (Exhibit J)



1

**Adobe EchoSign (Exhibit K)**

2



3

4

5

**eSign Live (Exhibit L)**

6

7



8

9

10

11

12

13

14     d.  Like DocuSign, SkySlope has action icons listed one side of the screen in

15         descending order of: Signature, Optional Signature, Initial, Optional Initial, Full

16         Name, Company, Title, and Date Signed.

17     **DocuSign (Exhibit M)**               **SkySlope/DigiSign (Exhibit N)**

18

19                    

20

21

22

23

24

25

26

27

28

e. Like DocuSign, SkySlope refers to an email message with a document attached as an "Envelope."  In contrast, competitor eSign Live refers to an email message with a document attached as a "Package."

**DocuSign (Exhibit O)**



**SkySlope/DigiSign (Exhibit P)**



**eSign Live (Exhibit Q)**



f.   Like DocuSign, at the bottom of an outgoing email, DigiSign offers options for: first, sending a reminder; second, indicating when a reminder will expire; and third, when to warn the signer of the expiration date listed, in descending order. The email sender fills in the boxes with the number of days for each option.

**DocuSign (Exhibit R)**

1

**SkySlope/DigiSign (Exhibit S)**



11    g.   Like DocuSign, when a recipient receives a document to be signed,

12         SkySlope/DigiSign uses the term "Adopt Your Signature," listing out several

13         options for italicized and/or cursive signatures enclosed in a text box with a

14         blue border, and has the signature code written across the middle section of the

15         box border.  In contrast, competitor Adobe EchoSign offers only a single

16         signature option, while competitor Co-Sign presents multiple signature options,

17         but presents them two at a time using a scrolling function and without any

18         border or signature code.

19    **DocuSign (Exhibit T)**



1

2

3
## SkySlope/DigiSign (ExhibitU)

4

5

6

7


8

9

10
## Adobe EchoSign (Exhibit V)

11

12

13

14

15

16

17

18

19
## CoSign (Exhibit W)

20

21

22


23

24

25

26

27

28

1               h.  Like DocuSign, SkySlope uses a "Document History" that lists the details of a

2        particular document first (i.e. subject, ID, status, holder, etc.), then has a chart

3        for time, user, action, activity, and status below with a blue header line.  They

4        both also use the terms "registered," "viewed," "signed," and "sent invitations,"

5        with an option to print the eSignature certificate in the upper right hand corner.

6        In contrast, competitor Adobe EchoSign includes document details in a

7        "history" tab beside a list of all documents in a user's EchoSign database.  The

8        document details are listed in bullet points noting each action in order, with the

9        status and document summary in a scroll box above.

**DocuSign (Exhibit X)**

1

2

## **SkySlope/DigiSign (Exhibit Y)**

3

4

5

6

7

8

9

10

11

12

13

14

## **Adobe EchoSign (Exhibit Z)**

15

16



17

18

19

20

21

22

23

24

25

26

27

28

36. DocuSign never authorized SkySlope to use the distinctive DocuSign Trade Dress to operate a knock-off eSignature platform with a layout likely to cause consumer confusion with the distinctive DocuSign Trade Dress. Nor did DocuSign authorize SkySlope's use of the distinctive [PAPER] logo.

37. On information and belief, SkySlope's unauthorized use of the distinctive DocuSign Trade Dress and [PAPER] logo is causing actual confusion in the marketplace.

38. On March 26, 2014, DocuSign sent a cease-and-desist letter to SkySlope informing SkySlope of its infringing conduct. SkySlope responded with an acknowledgement of receipt, but has yet to cease its infringing conduct.

**First Cause of Action**

**(Federal Trademark Infringement of the No Paper Logo – 15 U.S.C. § 1114(1))**

39. DocuSign repeats, realleges and incorporates Paragraphs 1-38 as though fully set forth herein.

40. DocuSign began using its registered [PAPER] logo in commerce in connection with its DocuSign eSignature platform prior to any use in commerce of the infringing [PAPER] logo by SkySlope.

41. As a result of DocuSign's substantial marketing and promotional efforts and the tremendous success of the DocuSign eSignature platform, users of eSignature platforms immediately associated the distinctive [PAPER] logo with DocuSign prior to any use in commerce of the infringing [PAPER] logo by SkySlope.

42. SkySlope's use in commerce of the [PAPER] logo in connection with its real estate transaction management solution, including its DigiSign eSignature platform, constitutes trademark infringement of DocuSign's rights in the registered [PAPER] logo pursuant to 15 U.S.C. § 1114(1).

43. SkySlope's use of a confusingly similar imitation of DocuSign's [PAPER] logo is likely to cause confusion, deception, and mistake by creating a false and misleading impression that SkySlope's goods and services were created or are distributed by DocuSign, or are associated or connected with DocuSign, or have the sponsorship, endorsement or approval of DocuSign.

44.     SkySlope has knowingly and willfully infringed DocuSign's trademark rights by deliberately exploiting the substantial goodwill associated with DocuSign's 🚫 logo. DocuSign is informed and believes and on that basis alleges that SkySlope selected the 🚫 logo with the express intent to cause confusion and to deceive consumers into believing that SkySlope's real estate transaction management solution, including its DigiSign eSignature platform, is associated with DocuSign.

45.     SkySlope has caused and is likely to continue causing, substantial injury to the public and to DocuSign, and DocuSign is entitled to injunctive relief and to recover SkySlope's profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1114, 1116 and 1117.  DocuSign will donate any monetary award recovered as a result of SkySlope's infringing conduct to charity.

**Second Cause of Action**

**(False Designation of Origin as to the No Paper Logo – 15 U.S.C. § 1125(1))**

46.     DocuSign repeats, realleges and incorporates Paragraphs 1-45 as though fully set forth herein.

47.     SkySlope's use of confusingly similar imitations of DocuSign's 🚫 logo has caused and is likely to cause confusion, deception, and mistake by creating a false and misleading impression that SkySlope's goods and services were created or are distributed by DocuSign, or are affiliated, connected, or associated with DocuSign, or have the sponsorship, endorsement, or approval of DocuSign.

48.     SkySlope has made false representations, false descriptions, and false designations of origin of its goods and services in violation of 15 U.S.C. § 1125(a), and SkySlope's activities have caused and, unless enjoined by this Court, will continue to cause a likelihood of confusion and deception of members of the trade and public and, additionally, injury to DocuSign's goodwill and reputation as symbolized by the 🚫 logo, for which DocuSign has no adequate remedy at law.

/ / /

/ / /

COMPLAINT                                                                                           - 23 -

49.     SkySlope's actions demonstrate intentional, willful, and malicious intent to trade on the goodwill associated with DocuSign's [logo] logo, to the great and irreparable injury of DocuSign.

50.     SkySlope's conduct has caused and is likely to continue causing, substantial injury to the public and to DocuSign, and DocuSign is entitled to injunctive relief and to recover SkySlope's profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1114, 1116 and 1117. DocuSign will donate any monetary award recovered as a result of SkySlope's infringing conduct to charity.

## Third Cause of Action

### (Trade Dress Infringement – 15 U.S.C. § 1125(a))

51.     DocuSign repeats, realleges and incorporates Paragraphs 1-50 as though fully set forth herein.

52.     As set forth in detail herein, the unique look and feel of DocuSign's eSignature platform constitutes protectable trade dress.

53.     The DocuSign Trade Dress is non-functional and has acquired secondary meaning.

54.     The similarities between the design and presentation of DocuSign's distinctive eSignature platform, published in interstate commerce, and SkySlope's knock-off DigiSign eSignature platform is likely to cause confusion, deception, and mistake by creating the false and misleading impression that SkySlope's DigiSign eSignature platform was created or is distributed by DocuSign, or is affiliated, connected, or associated with DocuSign, or has the sponsorship, endorsement or approval of DocuSign.

55.     SkySlope has made false representations, false descriptions, and false designations of origin of its goods and services in violation of 15 U.S.C. § 1125(a), and SkySlope's activities have caused and, unless enjoined by this Court, will continue to cause a likelihood of confusion and deception of members of the trade and public and, additionally, injury to DocuSign's goodwill and reputation as symbolized by the DocuSign Trade Dress, for which DocuSign has no remedy at law.

/ / /

56.     SkySlope's actions demonstrate intentional, willful, and malicious intent to trade on the goodwill associated with the DocuSign Trade Dress, to the great and irreparable injury of DocuSign.

57.     SkySlope's conduct has caused and is likely to continue causing, substantial injury to the public and to DocuSign, and DocuSign is entitled to injunctive relief and to recover SkySlope's profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1114, 1116 and 1117.  DocuSign will donate any monetary award recovered as a result of SkySlope's infringing conduct to charity.

## Fourth Cause of Action

### (California Statutory Unfair Competition)

### (California Business and Professions Code § 17200, *et seq*.)

58.     DocuSign repeats, realleges and incorporates Paragraphs 1-57 as though fully set forth herein.

59.     SkySlope is making unauthorized commercial use of DocuSign's logo and the distinctive DocuSign Trade Dress in a deliberate, willful, intentional and wrongful attempt to trade on DocuSign's goodwill, reputation and financial investments in the logo and DocuSign Trade Dress.

60.     By reason of SkySlope's conduct as alleged herein, SkySlope has engaged in unlawful, unfair and/or fraudulent ongoing business practices in violation of California Business and Professions Code § 17200.

61.     As a direct result of SkySlope's unfair competition with regard to its unauthorized use of the logo and DocuSign Trade Dress, SkySlope has unlawfully acquired, and continues to acquire on an ongoing basis, an unfair competitive advantage and has engaged in, and continues to engage in, wrongful business conduct to SkySlope's monetary advantage and to the detriment of DocuSign.

62.     SkySlope's conduct as alleged herein has been undertaken willfully and maliciously, and with full knowledge and in conscious disregard of DocuSign's rights.

/ / /

63.     SkySlope's illegal and unfair business practices are continuing, and injunctive relief pursuant to California Business and Professions Code § 17203 is necessary to prevent and restrain further violations by SkySlope.

64.     This Court has jurisdiction over the subject matter of this claim pursuant to 28 U.S.C. § 1338(b), this being a claim of unfair competition joined with a substantial and related claim under the Trademark Laws of the United States, and under 28 U.S.C. § 1367.

### Fifth Cause of Action

### (Common Law Trademark and Trade Dress Infringement and Unfair Competition)

65.     DocuSign repeats, realleges and incorporates Paragraphs 1-64 as though fully set forth herein.

66.     SkySlope's unauthorized commercial use of DocuSign's ~~PAPER~~ logo and the distinctive DocuSign Trade Dress constitutes trademark and trade dress infringement and is likely to cause confusion, deception and mistake among the consuming public and trade as to the source of, and authorization for, the SkySlope DigiSign eSignature platform sold and/or advertised by SkySlope in violation of the common law of the State of California.

67.     SkySlope's conduct as alleged herein has been undertaken willfully and maliciously, and with full knowledge and in conscious disregard of DocuSign's rights.

68.     As well as harming the public, SkySlope's conduct as alleged herein has caused and will continue to cause DocuSign irreparable harm for which there is no adequate remedy at law, and is also causing damage to DocuSign in an amount which cannot be accurately computed at this time but will be proven at trial.

69.     This Court has jurisdiction over the subject matter of this claim pursuant to 28 U.S.C. § 1338(b), this being a claim of infringement joined with a substantial and related claim under the Trademark Laws of the United States, and under 28 U.S.C. § 1367.

### PRAYER FOR RELIEF

WHEREFORE, DocuSign prays that:

1.      SkySlope and all of its agents, officers, employees, representatives, successors, assigns, attorneys, and all other persons acting for, with, by, through, or under authority from

1   SkySlope, or in concert or participation with SkySlope, and each of them, be enjoined

2   permanently from:

3            a.      using the [DocuSign logo] logo and DocuSign Trade Dress or any other copy,

4   reproduction, colorable imitation or simulation of the [DocuSign logo] logo and DocuSign Trade Dress on or

5   in connection with SkySlope's goods or services;

6            b.      using any trademark, trade dress, service mark, name, logo, design or

7   source of designation of any kind on or in connection with SkySlope's goods or services that is a

8   copy, reproduction, or simulation of, or confusingly similar to the trademarks, trade dresses,

9   service marks, names, or logos of DocuSign;

10            c.      using any trademark, trade dress, service mark, name, logo, design or

11   source of designation of any kind on or in connection with SkySlope's goods or services that is

12   likely to cause confusion, mistake, deception, or public misunderstanding that such goods or

13   services are produced or provided by DocuSign, are sponsored or authorized by DocuSign, or are

14   in any way connected or related to DocuSign;

15            d.      passing off, palming off, or assisting in palming off, SkySlope's goods or

16   services as those of DocuSign, or otherwise continuing any and all acts of unfair competition as

17   alleged in this Complaint;

18        2.      SkySlope be compelled to account to DocuSign for any and all profits derived by

19   SkySlope from the sale or distribution of infringing goods or services as described in this

20   Complaint, including prejudgment interest thereon;

21        3.      DocuSign be awarded all damages caused by the acts forming the basis of this

22   Complaint, together with prejudgment interest thereon;

23        4.      Based on SkySlope's knowing and intentional use of confusing similar imitations

24   of DocuSign's [DocuSign logo] logo and the DocuSign Trade Dress, the damages award be trebled and the

25   award of SkySlope's profits be enhanced as provided for by 15 U.S.C. § 1117(a);

26        5.      SkySlope be required to pay DocuSign the costs of this action and DocuSign's

27   reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a), and the state statutes cited in this

28   Complaint;

COMPLAINT                                                

1         6.     Based on SkySlope's willful and deliberate infringement of DocuSign's mark and

2    trade dress, and to deter such conduct in the future, DocuSign be awarded punitive damages; and

3         7.     DocuSign have such other and further relief as the Court may deem just.

4         DocuSign will donate any monetary award recovered as a result of SkySlope's infringing

5    conduct to charity.

6    **JURY TRIAL DEMAND**

7         DocuSign respectfully demands a trial by jury on all claims and issues so triable.

8

9    DATED:  November 12, 2014     KILPATRICK TOWNSEND & STOCKTON LLP

10

11        By: /s/ Dennis L. Wilson

12        Dennis L. Wilson
     David K. Caplan

13        Caroline Y. Barbee
     Attorneys for Plaintiff DOCUSIGN, INC.

14

15

16

17   66680776V.2

18

19

20

21

22

23

24

25

26

27

28